UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIEL YOUNG, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>COUNTY OF CONTRA COSTA,<br><br>    Defendant. | Case No. 20-cv-06848-NC<br><br>**ORDER GRANTING UNOPPOSED MOTION FOR ATTORNEYS' FEES AND GRANTING JOINT MOTION FOR FINAL APPROVAL OF CONSENT DECREE**<br><br>Re: Dkt. Nos. 21, 33 |

Following the Court's preliminary approval, notice to prospective class members, and a fairness hearing, the Court now considers the parties' joint motion for final approval of the Consent Decree. Dkt. No. 33 ("Mot. For Final Approval"). The plaintiffs in this action are a class of all people who are now, or in the future will be, detained in a Contra Costa County jail. Dkt. No. 1 ¶ 40. The class members allege that conditions in the County's jails violate the Americans with Disabilities Act, and the Eighth and Fourteenth Amendments of the United States Constitution. *See id.* ¶ 41, 46–65. The class members seek injunctive relief to address their claims. *Id.* ¶ 9. The parties entered into a Consent Decree which implements Remedial Plans addressing medical and mental health care conditions and custodial practices in the jail. *See* Dkt. No. 7 ("Proposed Consent Decree") at 2. By agreement, the County of Contra Costa will develop and implement appropriate policies and procedures to ensure compliance with those Remedial Plans. *See id.* Also

1  before the Court is Plaintiff's unopposed motion for attorneys' fees and costs totaling
2  $396,543.00, and for the cost of monitoring future compliance in an amount not to exceed
3  $175,000.00 per calendar year. Dkt. No. 21 ("Mot. For Fees").
4       The Court finds that the proposed Consent Decree is fair and reasonable.
5  Accordingly, the Court GRANTS the motion for final approval of the Consent Decree.
6  The Court also GRANTS the motion for attorneys' fees and costs and awards the requested
7  amounts in full.

## I. BACKGROUND

### A. Factual and Procedural History

Defendant County of Contra Costa operates jail facilities, including the Martinez Detention Facility, West County Detention Facility, and any new structures designed to house adult inmates under the jurisdiction of the Contra Costa County Sheriff after the date of the Consent Decree. Dkt. No. 1 ¶ 3; Proposed Consent Decree at 1 n.1. In 2016, the Prison Law Office began a detailed investigation into the conditions in Contra Costa County jails. *See* Dkt. No. 5-2 ("Specter Decl.") ¶ 3. In August 2016, the Prison Law Office sent the Contra Costa County Sheriff's Office and County Counsel a demand letter outlining the deficiencies it identified in the delivery of health care, accommodations for people with disabilities, and the overuse of, and conditions of, administrative segregation. *Id.* In March 2017, the parties entered into a structured negotiation agreement ("SNA") as an alternative to imminent litigation. *See id.*, Ex. A.

In the SNA, the parties agreed to work toward a settlement to address the conditions of confinement in the jails. *Id.*, Ex. A. The parties further agreed that the County would retain independent subject matter experts to assess medical care, mental health care, and the classification system within the County's jail system. *Id.*, Ex. A. The parties asked the experts to "identify deficiencies, if any, that they believe pose a substantial risk of serious harm to inmates confined within the detention facilities," and where applicable, to "make recommendations for improvement." *Id.* Ex. A at 2. The four experts, and the subject matters of their respective assessments of the jails, were as follows: Dr. Roberta Stellman,

M.D. (mental health care); Dr. Esmaeil Porsa, M.D. (medical care); Mr. Lindsay M. Hayes (suicide prevention practices); Dr. James Austin, Ph.D. (jail classification system). *See Id*. ¶ 5.

Using the experts' reports and following a thorough and sustained arms-length negotiation process, the parties developed Remedial Plans addressing the concerns raised in the experts' reports and implementing the experts' recommendations. *See* Proposed Consent Decree, Ex. A–B. The parties submitted the Proposed Consent Decree, which incorporates the Remedial Plans, to the County Board of Supervisors, who unanimously approved it on September 29, 2020. *See* Mot. For Final Approval at 3.

The parties filed the Consent Decree on October 1, 2020, concurrently with the Joint Motion for Preliminary Approval of Consent Decree. *See* Dkt. No. 7. On October 21, 2020, the Court granted the parties' joint motion seeking preliminary approval of the Consent Decree, finding that "the proposed settlement is the product of arms-length, serious, informed, and non-collusive negotiations between experienced and knowledgeable counsel who have actively prosecuted and defended this litigation." Dkt. No. 20. There, this Court ordered Defendant to post a Class Notice in all housing units in the Jails and make the proposed Consent Decree and Remedial Plans available on request. *Id.* at 2. The Court held a hearing for final approval of the Consent Decree on February 24, 2021. *See* Dkt. No. 36 ("Fairness Hearing (Feb. 24, 2021)").

**B.   Consent Decree**

The duration of this Consent Decree is five years from the date of this order, and it will automatically terminate after the five-year period. *See* Proposed Consent Decree at 10. During the duration of the Consent Decree, Defendant waives the right to seek termination of all or part of the Consent Decree pursuant to 18 U.S.C. § 3626(a)(1)(A) and (b)(1)(B). *Id.*

The detailed Remedial Plans focus primarily on the provision of medical care and mental health care to detainees. Among other things, the Remedial Plans address the Defendant's medical, dental, and mental health care and include provisions relating to (1)

3

1 adequate physical clinical space to support clinical operations and ensure patient privacy,
2 (2) drug/alcohol withdrawal and Medication Assisted Treatment programs, (3) quality
3 management/adverse event reviews, and (4) timeframes for intake, medical and mental
4 health screenings, medical care, and specialty care and medication. *See* Proposed Consent
5 Decree, Exs. A–B; *see also* Mot. For Final Approval at 4.

6 As set forth in the Consent Decree, the parties have agreed and jointly request that
7 Dr. Roberta Stellman (mental health care) serve as a Court Expert, pursuant to Federal
8 Rule of Evidence 706, to (a) monitor the County's implementation of and compliance with
9 the Remedial Plans; (b) assist with dispute resolution matters; and (c) provide reports on
10 the County's compliance or noncompliance with the Remedial Plans. *See* Proposed
11 Consent Decree at 3. The Consent Decree originally contemplated that Dr. Michael Rowe
12 would serve as the medical care Court Expert. *Id.* At the Fairness Hearing, however, the
13 parties indicated that he would no longer be suitable for purposes of this case. *See*
14 Fairness Hearing (Feb. 24, 2021). As such, the parties agreed to conduct a joint effort in
15 securing a new medical care Court Expert and will submit the name of an agreed-upon
16 expert by the status hearing on March 31, 2021. *Id.* Prison Law Office, as Plaintiffs'
17 counsel, will also monitor compliance with the Consent Decree and Remedial Plans, as set
18 forth in the Consent Decree. *See* Proposed Consent Decree at 6–8.

19 In the event of a dispute, the parties have agreed on a dispute resolution process,
20 including involvement of the Court Experts and/or a mediator as appropriate. *Id.* at 9. The
21 Court will retain jurisdiction to enforce the terms of the Consent Decree and will have the
22 power to enforce the agreement through specific performance and all other remedies
23 available to the Court for the duration of the Consent Decree. *Id.* The Consent Decree
24 will not bar individual damage claims by class members. *See Hiser v. Franklin*, 94 F.3d
25 1287, 1291 (9th Cir. 1996) ("[T]he general rule is that a class action suit seeking only
26 declaratory and injunctive relief does not bar subsequent individual damage claims by
27 class members, even if based on the same events.").

28 Subject to Court approval, Defendant agrees to pay Plaintiffs' counsel $396,543.00

1  for attorneys' fees and expenses incurred from the date that Plaintiffs' counsel commenced
2  an investigation into conditions at the Contra Costa County jails, through final approval of
3  the Consent Decree including approval of the Remedial Plans. *Id.* at 12.  The parties also
4  agree, as set forth in the Consent Decree, that Plaintiffs' counsel will be compensated for
5  their reasonable time and expenses related to monitoring the Consent Decree and Remedial
6  Plans, which will be capped at $175,000.00 per calendar year for the first two years of
7  monitoring.  *Id.*

### C.  Class Notice and Reaction to Consent Decree

On October 27 and 28, 2020, Defendant posted the Class Notice in both English and Spanish on the bulletin boards in all housing areas of the Jails, as well as in the intake area. *See* Dkt. No. 31 ("Bechler Decl.") ¶¶ 3–4.  On November 2, 2020, Defendant also uploaded digital copies of the Consent Decree and Remedial Plans into the kiosk system, which incarcerated people can access in their free time. *Id.* ¶ 5.  As of January 21, 2021, all notices remained posted in all housing units and available on the kiosks. *Id.* ¶ 13.  The Jails also provided inmates with postage and phone calls free of charge to communicate with the Court and Plaintiffs' counsel. *Id.* ¶¶ 8–11.  As of February 10, 2021, only one class member submitted a comment, and there are no objections. *See* Mot. For Final Approval at 3.

### D.  Fairness Hearing

The Court held a fairness hearing on February 24, 2021. *See* Fairness Hearing (Feb. 24, 2021).  There, the parties confirmed that the process of notifying class members went according to the process described in the Consent Decree, that 512 inmates have received single doses of the COVID19 vaccine and 211 inmates have received both doses, and that the jail staff have either received vaccinations, or will receive continuing education about the effectiveness of the COVID19 vaccine. *See id.*  As discussed above, the Court received one comment from a class member, but that comment did not object to the terms of the Consent Decree. *See id.*; *see also* Dkt. No. 27.  Neither party raised objections or concerns with the Consent Decree moving forward. *See* Fairness Hearing (Feb. 24, 2021).

1    In response to the Court's inquiries about medical expert Dr. Rowe, counsel
2    confirmed that Dr. Rowe is no longer suitable for the purposes of this case, and that
3    counsel on both sides are in the process of engaging a new medical expert to advise on the
4    remedial plans. *See id.* The parties also directed the Court to the provision in the Consent
5    Decree limiting Defendant's ability to terminate all or part of the Consent Decree pursuant
6    to 18 U.S.C. § 3626(a)(1)(A) and (b)(1)(B). *See* Proposed Consent Decree at 10. Finally,
7    counsel on both sides confirmed that they conducted due diligence in their inspection of
8    the hourly billing, and because Defendant's counsel is satisfied with the calculations, they
9    do not require a detailed breakdown from Plaintiffs' counsel. *See* Fairness Hearing (Feb.
10   24, 2021).

### E. Motion for Final Approval

The parties now move for final approval of the Consent Decree in an unopposed joint motion. *See* Mot. For Final Approval. In conjunction with the final approval motion, and as authorized by the terms of the Consent Decree, Plaintiffs also move to recover attorneys' fees, expenses, and costs of future compliance with the Consent Decree. *See* Mot. For Fees. Both motions are unopposed.

## II. DISCUSSION

As a threshold matter, this Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. sections 1331, 1343 and 1367. All parties have consented to magistrate judge jurisdiction under 28 U.S.C. § 636(c). Dkt. Nos. 15, 16. The Court first discusses the parties' joint motion for final approval of the Consent Decree, then discusses Plaintiffs' motion for attorneys' fees, expenses, and the costs of future compliance.

### A. The Court Finally Approves the Consent Decree

The Consent Decree contemplates one class consisting of "[a]ll individuals who are now, or in the future will be, detained in a Contra Costa County jail." Dkt. No. 19 ¶ 4. This Court certified the class on October 21, 2020, pursuant to Federal Rule of Civil Procedure 23(b)(1). *See id.* The Consent Decree does not bar class members from bringing individual damages claims or non-duplicative injunctive relief in a future lawsuit.

6

*See* Proposed Consent Decree, Ex. C.  Because the County has waived the right to seek termination of all or part of the Consent Decree pursuant to 18 U.S.C. § 3626(a)(1)(A) and (b) during the term of the Consent Decree, the Court makes no finding as to that section.

Any settlement agreement that will bind absent class members requires judicial approval.  Fed. R. Civ. P. 23(e).  In deciding whether approval is appropriate, "the universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable."  *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).  The Ninth Circuit has instructed district courts to consider and balance multiple factors when assessing whether a settlement is "fair, adequate, and free from collusion" under Rule 23(e).  *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).  To make this evaluation, courts in the Ninth Circuit look to the eight *Churchill* factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *see In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015).  However, the "relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case."  *Officers for Justice*, 688 F.2d at 625.  The determination of whether a proposed settlement is fair falls within the sound discretion of the district court.  *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

Here, considering the *Churchill* factors, the Court is persuaded that the Consent Decree merits approval and finds that the settlement is fair, reasonable, and adequate.  The Plaintiffs' case is strong, as shown by the reports prepared by four joint subject matter experts and the structured settlement discussions that began before the complaint was filed.

1    Nevertheless, Plaintiffs face substantial burdens in demonstrating a current and ongoing
2    violation of individuals' constitutional rights on a system-wide basis.  Proceeding through
3    pre-trial motions, trial, and possible appeal would impose risks, costs, and a substantial
4    delay in the implementation of any remedy in this matter.
5         Plaintiffs face little to no risk of maintaining class action status throughout the trial.
6    This Court approved Plaintiffs' unopposed application for class certification on October
7    21, 2020, *see* Dkt. No. 19, and it is unlikely that Defendant would contest class
8    certification if the Court rejected the proposed Consent Decree, *see* Fed. R. Civ. P.
9    23(c)(1)(C) (allowing court to revisit certification before final judgment).
10        The parties engaged in more than three years of structured negotiations before the
11   filing of this case.  *See* Specter Decl. ¶ 3; *see also* Mot. For Final Approval at 1.
12   Throughout, Plaintiffs' counsel had access to the jails, jail staff, and incarcerated people in
13   those facilities.  *Id.*, Ex. A at 2.  The considerable information-sharing and the reports
14   prepared by four joint subject matter experts provided the parties a comprehensive
15   understanding of the issues involved in this case.
16        Plaintiffs' counsel has extensive experience in prisoners' rights litigation and
17   complex class action litigation.  Specter Decl. ¶ 2.  Defendant is similarly represented by
18   experienced counsel who is knowledgeable in this type of litigation.  *See* Dkt. No. 20 at 1.
19   Thus, the Court finds that the settlement here is in the best interest of all plaintiffs.
20        The reaction of class members to the Consent Decree further supports final
21   approval.  Defendant complied with this Court's order regarding the provision of notice to
22   the class.  Dkt. Nos. 24, 31.  The Consent Decree afforded class members an opportunity
23   to comment or object to the settlement.  *See* Proposed Consent Decree.  Only one class
24   member submitted a comment regarding his concerns with medical treatment and
25   conditions of confinement — which Plaintiffs' counsel will address with monitoring — but
26   he did not object to the Consent Decree.  Dkt. No. 27.  Overall, this weighs in favor of
27   approval.
28        In sum, the Court finds that, viewed as a whole, the Consent Decree is sufficiently

1  "fair, adequate, and reasonable" to warrant approval, *see Officers for Justice*, 688 F.2d at
2  625, and finds that "the proposed settlement is the product of arms-length, serious,
3  informed, and non-collusive negotiations," *see* Dkt. No. 20 at 1. The Court therefore
4  approves the Consent Decree and GRANTS the joint motion for final approval.

**B.     The Motion for Attorneys' Fees and Other Expenses is Granted in Full**

In a separate motion, and as contemplated by the Consent Decree, Plaintiffs move for attorneys' fees, expenses, and cost of compliance awards. Specifically, Plaintiffs seek $396,543.00 in attorneys' fees, costs, and expenses, and $175,000.00 per calendar year for the cost of compliance with the Consent Decree, for up to two years. Mot. for Fees at 2. The Court finds that the figures for attorneys' fees, litigation expenses, and compliance costs are reasonable and awards those amounts in full.

**1.     Attorneys' Fees and Costs**

The Court finds that the total award of $396,543.00, including $1,308.00 in out-of-pocket costs, is a reasonable fee award given the facts of this case. "In a certified class action, the court may award reasonable attorney[s'] fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The parties agreed to an award of fees and costs totaling $396,543.00. The parties' fee agreement does not reduce any relief to be provided to the Class, and there is no evidence of collusion between Plaintiffs' counsel and Defendant. As such, the agreement as to attorneys' fees "is accorded great weigh." *Cox v. Clarus Mktg. Grp., LLC*, 291 F.R.D. 473, 482 (S.D. Cal. 2013).

The Court's task in evaluating a negotiated settlement is "simply to determine whether the negotiated fee is facially fair and reasonable." *Hernandez v. Kovacevich*, No. 04-cv-5515-OWW DLB, 2005 WL 2435906, at *8 (E.D. Cal. Sept. 30, 2005); *see also Officers for Justice*, 688 F.2d at 625 ("[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties . . . must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the

9

settlement, taken as a whole, is fair, reasonable and adequate to all concerned.").

Courts use the lodestar method to calculate attorneys' fees, by "multiplying the number of hours reasonably expended on a case by a reasonable hourly rate," *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016), and "[t]here is a strong presumption that the lodestar figure is reasonable," *Oviatt v. Pearce*, 954 F.2d 1470, 1482 (9th Cir. 1992); *Morales v. City of San Rafael*, 96 F.3d 359, 363 n.8 (9th Cir. 1996) (same). To determine the appropriate lodestar figure, courts evaluate the following factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Graves v. Arpaio*, 633 F. Supp. 2d 834, 842 (D. Ariz. 2009), *aff'd*, 623 F.3d 1043, (9th Cir. 2010) (quoting *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992)).

In this case, Plaintiffs sought to address the jails' classification system, suicide prevention practices, and the quality of health care provided to people detained in Defendant's jails. The Consent Decree, the Remedial Plans, and the remedial actions that Defendant has already instituted require Defendant to implement specific policies, procedures, and practices to address these concerns. To achieve these results, Plaintiffs' counsel devoted more than four years to investigating this case; meeting, corresponding with, and interviewing people in the jails; reviewing and analyzing records and policies; and meeting and negotiating with Defendant to develop the Consent Decree and Remedial Plans.

The Court further finds that the fee request is reasonable and necessary, and was appropriately calculated pursuant to the lodestar method, in accord with controlling Ninth Circuit authority. *Kelly*, 822 F.3d at 1099; *Kerr*, 526 F.2d at 70. As of September 4, 2020, Plaintiffs' counsel expended over 770 hours of compensable time, and has since expended

more hours in furtherance of the preliminary approval, notice process, and final approval. *See* Dkt. No. 21-1 ¶ 3. The parties negotiated a blended billing rate of $550 per hour for attorneys and $200 per hour for legal assistants and investigators, both of which are below San Francisco Bay Area market rates charged by law firms to private clients. *Id.* The $396,543.00 award reasonably reflects the time and labor required to litigate and resolve this matter, the novelty and difficulty of the legal questions presented, and the required skill to litigate the case.

Accordingly, the request for $396,543.00 in attorneys' fees and expenses is approved as fair, adequate, and reasonable, and Plaintiffs' Unopposed Motion for Attorneys' Fees and Expenses is GRANTED.

### 2. Compliance Award

The parties agreed to compensate Plaintiffs' counsel for reasonable time and expenses relating to forthcoming monitoring of the Consent Decree and Remedial Plans. *See* Proposed Consent Decree at 12. The Consent Decree states that "Plaintiffs' counsel shall submit a detailed invoice for their fees and expenses (including the date, amount of time spent, and a general description of each task) at the end of every quarter and Defendant shall pay the reasonable amount requested by Plaintiffs' counsel within 45 calendar days of receipt of each invoice." *Id.* at 12–13. Plaintiffs' counsel's fees and expenses are capped at $175,000.00 per calendar year during the first two years of monitoring, after which the parties must confer about any adjustment to the cap. *Id.* The parties also agreed that Defendant will pay Plaintiffs' counsel's reasonable rates for any litigation required to enforce or defend the Consent Decree or Remedial Plans, if Plaintiffs are the prevailing party. *Id.* at 13. The Court finds that the agreed upon cost of compliance, a maximum $175,000.00 per calendar year, is fair and reasonable.

### III. CONCLUSION

For the reasons stated above, the Court GRANTS the Joint Motion for Final Approval of the Consent Decree, save for the single outstanding term regarding an agreed-upon medical expert. *See generally* Proposed Consent Decree. The Court therefore

11

1  APPROVES and ADOPTS the Consent Decree as the Order of the Court, orders the
2  parties to comply with all its terms, orders Defendant to implement the Remedial Plans,
3  and appoints Dr. Roberta Stellman as a Court Expert, pursuant to Federal Rule of Evidence
4  706.
5       The Court further orders the parties to submit a status report on **March 24, 2021**,
6  and attend a status hearing on **March 31, 2021**, where they must (1) submit the name of an
7  agreed-upon expert in medical care to serve as a Court Expert, and (2) provide any other
8  updates that might assist the Court in overseeing the fair and just administration of the
9  settlement.
10      The Court GRANTS Plaintiffs' unopposed motion for attorneys' fees and other
11 expenses. The Court awards $396,543.00 in attorneys' fees and out-of-pocket litigation
12 expenses. Defendant is ordered to pay Plaintiffs' counsel $396,543.00 within 60 days of
13 this Order. Defendants are further ordered to pay Plaintiffs' counsel reasonable attorneys'
14 fees and expenses up to $175,000.00 per calendar year for monitoring the terms of the
15 Consent Decree and Remedial Plans for the first two years of the Consent Decree's
16 duration (2021 and 2022). After the first two years of the Consent Decree, the parties must
17 confer about any adjustment to that amount. Plaintiffs' counsel must submit a detailed
18 invoice of their fees and expenses (including the date, amount of time spent, and a general
19 description of each task) at the end of every quarter, and Defendant must pay the
20 reasonable amount requested by Plaintiffs' counsel within 45 calendar days of receipt of
21 each invoice.
22      This Order is a final judgment and the Clerk is requested to administratively close
23 this case. This Court will retain jurisdiction of the matter through the conclusion of the
24 five-year Consent Decree and will have the power to enforce the Consent Decree, as
25 discussed above.
26      **IT IS SO ORDERED.**
27 Dated: February 28, 2021                  
                                           NATHANAEL M. COUSINS
28                                            United States Magistrate Judge